# Wheeling.

## KELLER'S ADM'R v. McHUFFMAN et al.

Decided May 3, 1879.

[Absent, MOORE, JUDGE.]

1879
Special Term.

1. An action of debt is brought, upon an instrument of writing in these words, viz: "On demand, I promise to pay to David Keller the just and full sum of $200.00, for value received, as witness my hand and seal the 1st day of March, 1862.

THOMAS McHUFFMAN, [Seal.]

Security:—David M. Riffe," by the administrator of the payee against the said McHuffman and David M. Riffe jointly on the 9th day of April, 1872, in the circuit court of Monroe county. HELD: That said instrument of writing is a joint and several promise to pay as to both defendants, and that, *prima facie* at least, said instrument of writing is on its face as to the defendant McHuffman his single bill obligatory, and as to the defendant Riffe his promissory note, and that the deceased payee during his life, and his personal representative after his death, had the right to an action of debt against said McHuffman and Riffe jointly thereon, and was not bound to sue them separately in separate actions upon said instrument of writing.

2. Held, further, it being agreed that the deceased payee could not take the oath commonly called the suitor's test-oath, prescribed by §27 of chapter 136 of the Code of this State of 1868, and that the defendant, McHuffman, could take such oath and the defendant, Riffe, could not, that chapter 28 of the Acts of the Legislature of 1872-3, pp. 76 and 77, extended the statute of limitations of five years as to the said Riffe in said joint action against the said defendants.

3. Held further, that said last named act is constitutional as heretofore held in the case of *Huffman* v. *Alderson's adm'r*, 9th W. Va. R. 616.

A *supersedeas* to a judgment of the circuit court of Monroe county rendered on the 17th day of October, 1877 in an action of debt in said court then pending, wherein David Keller's administrator was plaintiff and David M. Riffe and Thomas McHuffman were defendants, allowed on the petition of said Riffe.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

The facts of the case fully appear in the opinion of the court.

*A. N. Campbell,* for plaintiff in error, cited the following authorities:

9 W. Va. 450; Code of Va. 1849, ch. 16, §17. p. 12; *Id.* 1860, same chapter, and section; 8 Gratt. 63; 4 Rob. Prac. 193; 3 Rob. (new) Prac. 105; 4 Humph. 332; 10 W. Va. 502; 6 Barr 302; 37 B. Mon. 376; 10 W. Va. 470; 18 Gratt. 801; 6 Rand. 39; 1 Rob. (old) Prac. 51; Code, ch. 106, §27; *Id.*, ch. 136, §10; 9 W. Va. 622; *Id.* 616; 1 Pet. 351; 7 Curtis, 612; 8 Cranch 72; 5 M. & W. 494; 2 Coms. 523; 4 Leigh 519; *Id.* 603; *Id.* 608; 6 Binn. 576; 6 B. & C. 603; 1 B. & A. 93; 3 Bing. 638; Joynes on Lim. 173, 179; Angell on Lim. §260 n.; Parsons Partn. 191 n.; 6; Cooley Con. Lim. 359; 42 Conn. 209; 78 Ill. 55; 1 Pet. 360-365; 1 Leigh 170; 9 Leigh 45; Angell on Lim., ch. 20; 1 Rob. (new) Prac., ch. 89; Parsons on Partn. 184, note N.; 8 Gratt. 110; 1 How. 315; 2 How. 608; 15 How 304; 18 Gratt. 435; 10 W. Va. 748; 16 Mass. 216; 1 Wash. 135.

No appearance for defendant in error.

HAYMOND, JUDGE, delivered the opinion of the Court:

On the 9th day of April, 1872, Henry Keller brought an action of debt against Thomas McHuffman and David M. Riffe for $200.00, debt and damages $200.00, in the circuit court of Monroe county. The declaration was

filed at May rules, 1872; and it contains two counts. The first alleges that the defendants by their certain note in writing dated the 1st of March, 1862, did on demand promise to pay, &c; and the second count alleges that the defendants, by their certain writing obligatory sealed with their seals dated on the 1st day of March, 1862, to the court shown, promised to pay, &c. The declaration has no count treating the instrument sued on as a single bill of the defendant McHuffman, and as the promissory note of the defendant, David M. Riffe. Oyer was not craved of the paper-writing mentioned in the second count, nor was any demurrer filed to either count. Afterwards, at a term of said court held on the 17th day of October, 1877, the parties appeared in court by their attorneys, and thereupon the defendants pleaded payment, to which the plaintiff replied generally; and issue was thereon joined. And it was then and there agreed between the parties that any matter should be given in evidence on either side under said pleading, which could be given in evidence, if specially and properly declared upon or pleaded at any stage. Whereupon the parties agreed the following facts: "1st. On the part of the plaintiff the bond sued on in the words and figures following, to-wit: 'On demand I promise to pay to David Keller the just and full sum of two hundred dollars for value received of him, as witness my hand and seal, the 1st day of March, 1862.

"THOMAS McHUFFMAN,        [Seal.]
"Security—David M. Riffe."

Next, on the part of the defendant, as evidence, the defendant, Riffe, stated that in signing said instrument he did not adopt as his seal the scroll thereon, but that he signed the same as his promissory note. It is an agreed fact that said Riffe could not make the affidavit prescribed by section 27 of chap. 106 of the Code of West Virginia; but that the said Thomas McHuffman, who signed said bond, could make said affidavit. It is further agreed that David Keller could not make said affidavit

and was obstructed and prevented from suing on said bond during the time from the 1st day of March, 1862, until the 1st day of March, 1865, and that the same was a Confederate contract and to be so scaled as to amount on this day, principal and interest, to $329.08, if anything be found at all. And all affidavits to said pleadings and proof in support thereof are hereby waived. And upon these agreed facts all matters, both of law and fact, arising hereon are by consent of parties submitted to the court in lieu of a jury. On consideration whereof the court found that the plaintiff was entitled to recover from the defendants the sum of $329.08, with interest thereon from the 17th day of October, 1877, until paid and his costs. To which finding and judgment of the court the defendant, Riffe, excepted, and prayed that his said exception might be saved to him on the record, which was then and there done. To this judgment of said circuit court the defendant, Riffe, upon his petition and assignment of error obtained from this court a *supersedeas*.

The error assigned by defendant, Riffe, in his said petition and brief of his counsel is that the court erred in not sustaining his reliance upon the plea of *non est factum* and the statute of limitations of five years, and in not rendering judgment in his favor upon the facts agreed.

This assignment of error upon the facts agreed involves the question, 1st: Is the paper-writing, sued on, the bond or single bill of the defendant, Riffe ? A sealed instrument in the singular number, but signed and sealed by by two persons, is joint and several. As for instance the writing begins, " I promise to pay, " &c., and concludes " I bind myself, my heirs," &c. without mentioning any name in it, and is signed and sealed by both defendants. *Holman and Wilson* v. *Gillian,* 6 Rand. 39 ; 2d Book of Tucker's Commentaries, vol. 1 275 ; Peake's Nisi Prius 130; Holt's Nisi Prius cited in 1 Bam. & Cres. 407. In the case of *Bohannen* v. *Lewis,* 1 Mon. (Ky.) 376, the action was covenant on a writing in the following words : " For value received, I promise to pay John Lewis £50

1879
Special Term.

Keller's Adm'r
v.
McHuffman
et al.

worth of horses, to be valued by White and Harman Nash, at their value as trading for land, to be paid on or before the first day of November, one thousand eight hundred and eleven. Witness my hand and seal, this ·31st day of October, 1809.

> (Signed)      " GEORGE BOHANNEN,     [Seal.]
>                " JULIUS BOHANNEN."

The breach assigned was the non-payment of the horses. The declaration in setting out the instrument did it thus: " The said defendants, by their certain covenant in writing signed with their proper names, and sealed with the seal of the defendant George, and which is now to the court here shown," &c. The defendant craved oyer and demurred, in which the plaintiff joined, and the demurrer was sustained. But the plaintiff then obtained leave to amend his declaration, and did so by striking out the words "seal of the defendant, George," and inserting in lieu thereof, "seal of the defendants." The defendants still retained their oyer and again demurred to the declaration, which the court then overruled ; and the correctness of this last decision was presented in this case to the Court of Appeals of Kentucky.

Judge Mills, who delivered the opinion of the court in the case, at page 377 says: " It is evident, the first decision of the court was correct. For the plaintiff having declared in covenant against both, and stated the deed to be sealed by one, could not sustain his action jointly. As to one it was a covenant, and as to the other, a simple contract, and as the seal is essential to support covenant, and the defendant liable on simple contract could not be joined in covenant, it is clear the action could not be supported. But as the plaintiff amended his declaration, and stated it to be sealed by both, his attitude was made far better. If the writing was not sealed in fact by both, it is evident that his action therein could not be aided by this statement, which sets out a writing not according to the truth. The only question, then, which can arise in

favor of the plaintiff on this last demurrer is: Could the court on oyer and demurrer see that the instrument was not sealed by both, or was a plea necessary to contest the fact of its being sealed by both? or in other words: Must the instrument declared on as sealed appear upon oyer to have a seal at both signatures to enable the plaintiff to recover? Formerly seals were made by wax only; but an act of Assembly has made a scroll affixed, in lieu of a seal, equal to a seal, or to the same effect. When wax was the only seal employed, any number of parties might use the same seal. Shepherd, in his Touchstone, page 55, says, if there be twenty to seal one deed, and they all seal upon one piece of wax and with one seal, yet if they make distinct and several prints, this is a sufficient sealing and the deed is good. Modern authorities have gone still farther, and decided that one may seal for the rest with their consent, and the deed will be as binding as if every one had put his several seal, and one may execute for the other in his presence, and affix but one seal. Phil. Ev. 416. If then one seal on wax would be good for so many, and two or more might affix but one seal, it follows that the same may happen with a scroll, and when an instrument with one seal and two or more signers, is alleged to be sealed by all, the court on demurrer is not authorized to infer from there being but one seal, and two or more signers, that but one in fact sealed the instrument; and the party who contends that it is not his seal, must reach the fact by way of plea, controverting the allegation—and as one seal may be the seal of many signers, the court from the bare inspection of the paper and declaration, cannot decide that it is the seal of one only." ·

In the case of *Bowman* v. *Robb*, 6 Barr (Pa. St.) 302, it was held according to the syllabus, that "where the obligation of two parties, which concluded with the words, *witness our hands and seals,* had but one seal, which was affixed to his name, by the party who drew and first exe-

*1879
Special Term.*

*Keller's Adm'r
v.
McHuffman
et al.*

cuted the same, and nearly opposite to this seal the other party signed his name, *it was held*, that the obligation on its face, furnished intrinsic evidence for the jury that the party last signing it had adopted the seal as it stood upon the paper." This was an action on two single bills; and the defendant, Bowman, who was security for Forsyth, the principal debtor, who was not summoned in the cause, pleaded *non est factum, non assumpsit*, statute of limitations, and payment, &c. The case was tried by a jury; and it appears that each single bill is in form as follows: "$75.00. Muncy, May 4, 1833. One year after date, we promise to pay to the order of John Robb, or assigns, seventy-five dollars, without defalcation, for value received. Witness our hands and seals, with lawful intent.

"ORLIN FORSYTH,

——————————— [L. S.]

"JOSHUA BOWMAN."

It appears that after the plaintiff had proved the signatures of Forsyth and Bowman to the single bills by a witness who was acquainted with their handwriting, the defendant read to the jury the deposition of said Orlin Forsyth, who testified that a short time prior to the 4th of May, 1833, he applied to the plaintiff, Robb, for a loan of money for one year—that he told him he would give him good security for it—he thought the name of Joshua Bowman was mentioned as security; that on the 4th of May, 1833, the plaintiff came to his (Forsyth's) store, and loaned him $350.00 That he gave him as a payment for such loan five notes, four for $75.00 each, and one of $50.00, payable one year after date, signed by himself and defendant, Bowman, as security; that when the plaintiff told him (Forsyth) the amount he could loan him, he went to his desk and filled up five printed notes—that he went to the barn of said Bowman to get his name to the notes, and he and Bowman went to Bowman's house—that the notes were presented to Bowman and signed by him; that there was no person

present except Bowman; that his (Forsyth's) name was signed to the notes at the time he filled them up at his store; that Bowman was not present at that time; that Bowman was not at his (Forsyth's) store at the time of receiving the money or delivering the notes to the plaintiff; that if the seal attached to said notes was made by him (Forsyth), it was made at the time he signed the notes, and prior to the signing of them by Bowman; that at the time he (Forsyth) presented the notes to the plaintiff, he raised an objection to said notes, and remarked there ought to be two seals, and he (Forsyth) remarked that the notes in all probability would stand but one year; it would not make any difference; it would be just as good for six years, as if there were two seals; he (plaintiff) took the notes and left the store; that Bowman said nothing about adopting the seal as his, nor did he authorize him (Forsyth) to deliver the notes to the plaintiff as sealed instruments by him. It also appeared there was no room for two seals, and Forsyth's name was further from the line for signature than Bowman's was below it. No objection appears to have been made to the reading of the deposition of Forsyth as evidence; and the court below in its opinion seems to have regarded it as proper evidence. The jury returned a verdict in favor of plaintiff, and the court gave judgment thereon, and the defendant took his writ of error to the Supreme Court. The Supreme Court at page 310 in deciding the case said: " There were actually two seals on the face of each note—the one made by a printed stamp and the other by an exterior circumflex of a pen. But even if that were not so, there was intrinsic evidence that Bowman had adopted the seal as it stood upon the paper, and the jury might possibly have disregarded the extrinsic evidence, had the two been incompatible," &c.

In the case of *Norvell use, &c.* v. *Walker*, 9 W. Va. 447, it was held by this Court as follows: "W. and N. entered into a written agreement, which concluded with the words '*witness the following signatures and seals*' and

it had but one *scroll* which was placed opposite the name of W. as a seal. N.'s name was signed immediately under W.'s name. The declaration described the said writing as '*signed by the said defendants and said plaintiff, and sealed with the seal of said defendant and the said plaintiff*'—Held: on oyer of the agreement, and demurrer to the declaration for alleged variance between the agreement described, and the agreement itself, that there is no variance; and that the one scroll must be taken as the adopted scroll of both parties to said agreement."

The instrument, on which the last named case was founded, is dated the 20th of August, 1871. The 12th paragraph of section 17, chapter 16 of the Code of Virginia, which was in force in this State at the time the writing in the case at bar was made, provided among other things as follows: "And in any case in which the seal of any natural person shall be required to a paper, it shall be sufficient for such person to affix to such paper a scroll by way of seal." And the 15th section of ch. 13 of the Code of this State of 1868 among other things provides as follows: "When the seal of a natural person is required to a paper, he may affix thereto a scroll by way of seal, or adopt as his seal any scroll, written, printed, or engraved, made thereon by another." The decision in the case of *Norval* v. *Walker*, (*Ubi Supra*) was made under the section of the Code of this State of 1868. It has been held by some courts, that although in the body of the writing it is said that the parties have set their hands and seals, yet it is not a specialty unless it be actually sealed and delivered. *Taylor* v. *Glassel*, 2 Serg. & R. 504; opinion of Chief Justice Tilghman, *Parks* v. *Hensett, &c.*, 9 Leigh 511, 514, 515, 516; *Smith et al* v. *Henning*, 10 W. Va. 630, 631, 632, 633, and authorities therein cited.

It is also laid down by Judge Parker in *Parks* v. *Hensett*, and *Taylor* v. *Glassel*, 2 Serg & R., "that the common law does not require that the party should anywhere in the instrument speak of a seal, but only that it

be sealed and the sealing proved. The *fact*, and not the assertion, fixes the nature of the instrument. Thus to constitute a sealed instrument there must be a seal or scroll affixed, and some recognition of it in the instrument, or some evidence of it *aliunde*; but it can never be maintained that such evidence, whether by the proof of witnesses or acknowledgement of the party, will not supply the place of such recognition. Thus suppose he says at the time, 'I affix this scroll as my seal', or within the scroll he writes the word 'seal' and delivers it as his deed; I am at a loss to conceive how any court or jury could resist the conclusion that it was a sealed instrument."

Judge Parker also refers to former decisions of the Court of Appeals of Virginia upon this subject and says: "There may be some loose expressions to be found in them giving countenance to the objection; but when the cases themselves are carefully examined I am persuaded they will not be found to support it." He then refers to the cases naming them. See also on this point *Ashwell* v. *Ayers, et al.*, 4 Gratt. 283; *Smith et al* v. *Henning*, 10 W. Va. 600, 630, 631, 632, 633.

In the case of *Rankin* v. *Roler et al.*, 8 Gratt. 63, in the Court of Appeals of Virginia, where an instrument binding the parties thereto to pay a sum of money purports to be under their hands and seals, but it is signed by one of the parties without a seal, and by the other parties with seals to their names. *Held*, upon demurrer, that one action of debt may be brought against all the parties." This was an action of debt, brought upon the following paper: "$485.00. One day after date we promise and bind ourselves, our heirs, &c., to pay to George Rankin or order the sum of $485.00, for value received. As witness our hands and seals.

"ROLER & CRAWFORD,
"BENJAMIN WELLER,     [Seal.]
"JOHN W. ROLER,       [Seal.]"

The action was in the name of George Rankin against all the other parties to the paper. The declaration was as follows: "that defendants, J. C. R. and J. C. on &c., in &c., made their certain note in writing commonly called a promissory note, and the said defendants, B. W. and J. W. R. did then and there, to-wit, on &c., in &c., sign said note and annex their seals thereto, which said note became as to said defendants, B. W. and J. W. R. their writing obligatory, sealed with their seals, and is now here shown to the court, the date whereof is the day and year aforesaid, by which said writing the said defendants, J. C. R. and J. C. and said defendants B. W. and J. R. jointly promised and bound themselves to pay to said plaintiff or order one day after date the sum of $485.00, for value received. Yet the said defendants the said sum of money, or any part thereof to pay to said plaintiff, although often requested have hitherto failed and refused and still do refuse, to the plaintiff's damage $50.00; and therefore he sues, &c." 4th vol. Rob. New Pr. 193. The defendants appeared and pleaded payment and at another day they demurred to the declaration; the plaintiff joined in the demurrer; and upon the hearing of the case the court rendered a judgment for the defendants upon the demurrer. Whereupon the case went to the Court of Appeals upon a *supersedeas*; and a majority of the Court of Appeals were of opinion that the circuit court erred in sustaining the demurrer to the declaration, and reversed the judgment of the circuit court and remanded the cause for the trial of the issue in fact joined upon the plea of payment.

The court in its opinion in this case delivered by Judge Moncure at page 67 says: "The defendants contracted together with the plaintiff for one and the same act, to-wit, the payment of the debt in the declaration mentioned; and it appears on the face of the contract, that they intended to become jointly liable. The fact that there is no seal or scroll annexed to the signature of Roler & Crawford, and that there are scrolls annexed

to the signatures of Benjamin Weller and John W.
Roler, while it makes the instrument a promissory note
as to the former, and a single bill obligatory as to the
latter, does not change the joint nature of the contract.
Without intending to decide in this case that several
actions might not be maintained upon the instrument,
regarding it in one action as the simple contract of
Roler & Crawford, and in another as the specialty of
Benjamin Weller and John W. Roler, the court is yet of
opinion that one action of debt may be maintained upon
it against all of the joint contractors; each of whom
will in such action be entitled to make any defense
which he might make in a separate action. In this way
the intention of the parties is effectuated, multiplicity of
actions is avoided, and no injury or inconvenience is oc-
casioned to any person." It must be remembered, that
the court in this case only passed on the demurrer to the
declaration; and the effect of the demurrer was to admit
that the writing declared upon was a promissory note as
to Jacob C. Roler and John Crawford partners, &c., under
the firm of Roler & Crawford and a single bill as to
Benjamin Weller and John W. Roler, as in the declara-
tion alleged.

I do not at all feel authorized to conclude from this
decision, that if the declaration had alleged in proper
form, that the defendants by their writing obligatory
signed, &c., and sealed with the seals of the defendants
promised to pay to the plaintiff, &c. and oyer had been
craved of the single bill declared upon, and the decla-
ration demurred to by the defendants or any of them,
that the court would have sustained the demurrer, but
might have done as the Court of Appeals of Kentucky
did in the case of *Bohannen* v. *Lewis*, 3 Mon. 376, (*Ubi
Supra*), viz: For on oyer and demurrer the court can-
not infer from there being but two seals and three or
more signers, that but two in fact sealed the instrument;
and the party who contends that it is not his seal must
reach the fact by way of plea controverting the allega-

tion; and as one seal may be the seal of many signers, the court from a bare inspection of the paper and declaration cannot decide, that it is the seal of two only; but this question is not here decided as it does not fairly arise in this case.

Judge Daniel in his opinion in the case says: "If the plaintiff had in this case declared on the paper, of which *profert* is made, as the joint bond of Roler & Crawford, Weller and John W. Roler, I am not prepared to say that such a declaration might not have been good; for though there are but two scrolls to the paper, one of which is opposite to the name of Weller and the other opposite to the name of John W. Roler, and though the name of Roler & Crawford are signed as a firm, yet it might be that each of the last named parties signed the paper, and adopted one of the scrolls upon it as his seal, or that one of them executed the paper as the bond of each, being duly authorized by the other so to do. The plaintiff however does not so treat the transaction, and most probably because the facts of the case could not justify him in so treating it."

In the case of *Oldham & Bailey*, v. *Hunt*, 5 Humph. (Tenn.) 332, it was held "that a joint action of debt lies against the persons who have bound themselves by the same writing to pay a sum of money, the one with and the other without a seal." The precise character of the writing on which this case was founded, does not appear in the report—that is, it does not appear whether the writing was: "I promise to pay," &c., or "we promise to pay," &c. But Judge Reese delivered the opinion of the Court in which he says: "This is an action of debt brought upon an instrument which, as to Oldham, is a promissory note, and as to Bailey, is a bill single; that is, Bailey annexes his seal, and Oldham does not. The declaration contains three counts; the first, describing the instrument as a promissory note; the second as a writing obligatory, and the third, as a paper-writing, which it sets forth in all its words and figures. The defendants demurred,

and the circuit court overruled the demurrer. This we are satisfied was correct; for whatever misdescription of the instrument may have existed in the first and second counts, the third count describes it correctly. The contract and liability of the defendants was joint, and they can be jointly sued thereon, although one of them creates against himself evidence of a higher and more enduring character, than does the other. The simple contract of the one does not merge in such case in the obligation of the other. Each continues liable to the plaintiff; and the paper-writing is the common *vinculum* which makes that liability a joint one."

In this case oyer was not craved of the writing declared upon ; and the demurrer seems to have been to the whole declaration and not to each count. I do not understand the court to have held in this case on the demurrer that the second count was a misdescription of the writing sued upon, or that upon the facts alleged in the second count, taking them as true, would not constitute a good count. The second section of chapter 143, of the Code of Virginia of 1849, and the same section and chapter of the Code of 1860, which was in force with us when the writing sued on in the case at bar was made, is as follows : "2. Any writing, to which the person making it shall affix a scroll by way of seal, shall be of the same force as if it were actually sealed." This section is omitted in the Code of this State of 1868 from chapter 98 thereof, which is otherwise substantially the same as chapter 143 of the Code of Va. of 1860; but there is in the Code of 1868 of this State in section 15 of chapter 13, as we have seen, the provision that "when the seal of a natural person is required to a paper, he may affix thereto a scroll by way of seal, or adopt as his seal any scroll, written, printed or engraved, made thereon by another." These last words "or adopt as his seal any scroll, written, printed or engraved, made thereon by another" are not in the Code of 1860, nor in the Code of 1849. (See 12th paragraph of section 17 of chapter 16 of Code of 1860.)

1879
Special Term.

Keller's Adm'r
v
McHuffman
et al.

But in the case of *Clegg* v. *Lemessurier*, 15 Gratt. 108, it was held by the Court of Appeals of Virginia in 1859. "1. A writing for the payment of money or other purpose, which is not required to be by deed, having a scroll at the foot thereof with the word 'seal' written therein, but which is not recognized in the body of the instrument as a 'seal,' is not a sealed instrument. 2. Evidence *aliunde* is not admissible to prove that a scroll at the foot of a writing was intended as a seal The writing on which the action of debt was founded in this case was as follows:

"PITTSBORO, January 1, 1835.

"One day after date, I promise to pay Nathaniel Clegg or order, the sum of $277.51, value received, in lumber.

"P. LEMESSURIER,   [Seal.]"

In this case the first count was in the usual form upon two writings obligatory of which *profert* was made. The second count stated that the defendant by his certain writing subscribed by him, and to which he affixed a scroll by way of seal, of which *profert* was also made, promised, &c. The defendant craved oyer of the writings, and demurred to each count; and the court below sustained the demurrer. This judgment was affirmed unanimously by the Court of Appeals. Judge Lee delivered the opinion of the Court and considered and refers to the cases of *Baird* v. *Blairgrove, ex'r.*, 1 Wash. 170; *Austin's adm'r* v. *Whitlex's ex'rs*, 1 Munf. 487; *Anderson* v. *Bullock, &c.*, 4 Munf. 422; *Jenkins* v. *Hust's commissioners*, 2 Rand. 446; *Peasley* v. *Boatwright*, 2 Leigh 195; *Turberville* v. *Bearnaud*, 7 Leigh 302; *Crannell* v. *Tate's ex'r*, 7 Leigh 301; and also *Parks* v. *Hawlett*, 9 Leigh 511; *Pollock* v. *Glassel*, 2 Gratt. 439; *Ashwell* v. *Ayres*, 4 Gratt. 283. "The last named three cases" he says, "may, I think, be readily distinguished from those we have been considering" (that is those immediately preceding)," however broad the language of some of the judges whose opinions are given may appear to be;

and one may well concur in the result of each of those cases, although he might not in all the views taken by the judges."

Judge Lee at page 119 says: "Judge Baldwin in his opinion in the case in 2 Gratt. 439 (*Ubi Supra*), also distinguishes between cases like that of *Parks* v. *Hewlett*, and *Ashwell* v. *Ayers*, (decided sometime afterwards) and the cases to which the decisions he had alluded to should apply ; but there is nothing in the opinion, when fairly considered, and nothing in the case, or that of *Parks* v. *Hewlett*, or that of *Ashwell* v. *Ayres*, which overthrows or in any material respect disturbs the rule established by the previous decisions of this Court ; and that rule I think may be thus stated ; that in cases of contracts in writing, like that in the present case, which might have been intended to be, indifferently, simple contracts or sealed instruments, and in which the question is as to the character of the instrument and its legal effects and consequences, the fact that a scroll may be affixed to the name of the maker, with or without the word seal written within, is not of itself such a recognition of the scroll for a seal as will make the writing a sealed instrument ; and that evidence *dehors* the paper cannot be admitted for the purpose of showing that it was in fact intended to be such an instrument. That many of our sister States have adopted a different rule, furnishes no sufficient reason, in my judgment, why we should reverse our course of decisions or change the rule they have prescribed." And at page 121, he says: "I have only to add in conclusion, that whether the objection is made on oyer and demurrer, or on motion to exclude the paper at the trial, the principle, as it seems to me, is precisely the same."

The case of *Smith et al.* v. *Henly*, was similar in principle to that of *Ashwell* v. *Ayres*, 4 Gratt. 283, and not of the character of *Clegg* v. *Lemessurier*, *Ubi Supra*. But it will be perceived that the case last named in 15 Gratt is unlike the case at bar. In that case the scroll with

the word seal written in it is not recognized in the body of the instrument as a seal. In the case at bar, the instrument sued on concludes, "as witness my hand and seal the 1st day of March, 1862" It appears to be signed Thomas McHuffman and immediately opposite his name is a scroll, just below and a little to the left is written "security :—David M. Riffe."

As the case stands before us I suppose (though I have doubts) I may consider it as though the plea of *non est factum* was filed, such appearing to be the substance of the agreement of the parties as entered of record, and as being filed any other plea or count in the declaration, which might have been filed, applicable to the case made by the agreement of the parties.

A promissory note commencing "I promise to pay" and signed by two persons is several or joint. *Marsh* v. *Wood*, 1 Peak. N. P. C. 130 ; *Clarks* v. *Blackstock*, 1 Holt 474, (3 E. C. L. 159) ; *Hemonway* v. *Sterne*, 7 Mass. 58 ; *Holman* v. *Gillian*, 6 Rand. 39, opinion of Court and authorities there cited ; *Van Alstyne* v. *Van Slyck*, 10 Barb. 387. We have seen that in Virginia, an obligation commencing "I promise to pay" and concluding "I bind myself my heirs," &c., and signed by two persons was adjudged joint and several ; the court considering that an instrument in such terms should not cease to be joint and several, merely because it is sealed, 6 Rand. 39. If the writing sued upon in the case at bar be considered a single bill as to both defendants, then it is a joint and several obligation, and the parties thereto may be sued jointly or severally. If it had no seal to it, it would be a joint and several promissory note, and the parties might be sued thereon jointly and severally. These propositions being true and established by authority, it seems to be clear that if said writing is in fact the single bill of defendant McHuffman and the promissory note of defendant Riffe, still the promise to pay should be regarded as joint and several as to the defendants, and that the plaintiff had the right to sue the defendants thereon jointly

or severally, *Van Alstyne* v. *Van Slyck*, 10 Barb. 383, 387.

In the case of *Van Alstyne*, 10 Barb. 383, the action was covenant. The declaration alleged that the defendants sealed the writing with their seals; and the declaration was demurred to, and demurrer overruled. It seems that oyer was craved of the writing, which was as follows:

"In consideration of one dollars in hand, to me paid by Martin M. Garner, I hereby covenant and agree to become the surety for the faithful performance of said Garner's covenants as expressed in the above said lease. Sealed with my seal, and dated this 3d day of April, 1845.

"John P. Van Slyck. [l. s.]<br>"Christopher H. Garner.

"Witness—S. V. Cady."

This writing seems to have been annexed to the lease therein named; and the lease was set out in the declaration. The action was against John P. Van Slyck and Christopher H. Garner jointly. Judge Parker in delivering the opinion of the Court at pages 387 and 388 says: "The obligation of the defendants was clearly a joint and several one. When a promissory note is written, 'I promise to pay' signed by two persons, they are jointly and severally liable (7 Mass. 58; Story on Promissory Notes 957.) But it is objected that there is but one seal, and that therefore both defendants cannot be jointly liable in covenant. The oyer shows but one seal, and that is opposite the signature of Van Slyck, the first signer. When there are several persons executing a deed, it is not necessary to affix a separate seal for each, provided it appear that the seal affixed was intended to be adopted as the seal of all. (Perkins, 59 §134; Sir William Jones Rep. 268; 1 Dall. 63; 3 Mon. 376; 2 Dev. 493.) It was so held, when a deed was executed by an attorney for several persons. (*Townsend* v. *Hubbard*, 4 Hill 351.) And where one of two partners executed

1879<br>Special Term.<br><hr>Keller's Adm'r<br>v.<br>McHuffman<br>et al.

a bond, to which was subscribed the name of the firm, and affixed one seal, the other partner having previously read and approved the bond and consenting that his co-partner should execute it for both, and being in the store at the time of its execution, though it was not actually signed and sealed in his immediate presence, this was held a good execution of the bond, so as to make it the deed of both (*Mackay* v. *Bloodgood,* 9 Johns. 285.). In *Ball* v. *Duntersville,* A. executed a deed for himself and his partner by the authority of his partner, and in his presence; it was held a good execution of both, though only sealed once, (4 T. R. 313). In *Flood* v. *Yarneles,* (1 Blackf. Ind. 102,) it was held that two persons may make use of one seal in the execution of a bond, and it will be the deed of both. The case of *Slatter* v. *Cowan,* (7 Gill & J. 284) is perhaps more like that under consideration. It is there said, the same contract may be the specialty of one, and the parol agreement of another; and such is this case, if the seal affixed is that of Van Slyck alone, and not of Garner. In *Slatter* v. *Cowan,* it is also held, that where there is but one seal to a contract, it is presumed to be the seal of the party whose signature is prefixed to it; but upon proof of its being made by the authority of other parties to the contract, it will be held to be their seals respectively. If instead of demurring in this case, the defendants had severally pleaded *non est factum* the rule last referred to would have been applicable. On the trial the seal would be presumed to be Van Slyck's alone, until the plaintiff proved affirmatively it was the seal of both of them. But the defendants are not in a situation to deny here, that it is not the seal of both of them. The plaintiff avers in her declaration, that the covenant declared on was sealed with the seals of the said defendants and this averment is admitted by the demurrer. In giving judgment therefore upon this issue, the court must regard the seal that appears upon the instrument, as being placed there by both defendants." See also upon this subject

Collyer on Partnership, 4th American ed. §§465, 466 and cases there cited.

In the case of *Slatter* v. *Cowan*, 7 Gill and J. 284, the writing sued on concluded as follows: "In witness of which, we have hereunto set our hands and seals, this 25th day of the 4th month, 1820."

"THOMAS P. SLATTER, [L. S.]

"JOHN G. COWAN.

"Teste:—Wm. H. Pleasants."

In this case the Court held, as appears by the syllabus, that "whether a written contract is a specialty, or a parol contract of a party to it, depends upon the fact whether it is sealed or not by such party, or some person for him and with his authority. The same contract may be the specialty of one, and the parol agreement of another party to it. When there is but one seal to a contract, it is presumed to be the seal of the party whose signature is prefixed to it; but upon proof of it being made by the authority of the other parties to the contract, it will be held to be their seals respectively."

In the case of *Yarborough* v. *Menday*, 2 Dev. (N. C.) 493, it was held "when an intrument is signed by two persons, and but one seal is affixed, ordinarily it is to be taken as the deed of that party only whose name is written nearest to it. But it may be shown by proof, either on the face of, or *dehors,* the instrument, that the other party adopted the seal." Judge Ruffin in this case said: "Upon the face of the paper, the seal is to be taken as that of the person whose name is next to, or written to it. Such is the course of business." But I should remark here, that the rule in North Carolina is not the same as that established in 15 Gratt. (*Ubi Supra*), or at least it would seem so from what appears in the opinion of Chief Justice Henderson in that case at page 494.

I take it as being well settled in Virginia, that although in the body of the writing it is said that the

parties have set their hands and seals, yet it is not a specialty, unless it be actually sealed, and a scroll may be used in lieu of a seal, by natural persons at least. And when it is said in the writing, that the parties have set their hands and seals, and there is a seal or scroll appearing at the end of the signature of each one who signed it, it is a specialty. But I have not been able to find any case in Virginia, where the writing is like the one in the case at bar, in which it has been held that when there is but one scroll or seal, as in this case, fixed opposite the name of the first signer, that the court will presume that the other person or persons signing under the first signature adopted the scroll appearing as his scroll because the writing concludes "witness my hand and seal." The case nearest like the case at bar which find reported in Virginia Reports is the case of *Rankin* v. *Roler*, 8 Gratt. (*Ubi Supra*), and I am unable to conclude from the opinion of the majority of the Court, as given in that case, that they held such to be the rule, but if I can draw any correct conclusion from the opinion of Judge Moncure, who delivered the opinion of a majority of the Court, I should infer therefrom, that the rule in that case at least was to the contrary. But the Court may have considered in that case, that as the first name signed to the writing in question was the name of a firm, and no scroll or seal fixed opposite the firm name, and only two other scrolls which were fixed opposite the names of the other two signatures to the writing, and as ordinarily one partner could not make a deed or specialty binding on his other partners by signing the firm name thereto, but only under circumstances not appearing in that case, it was the purpose and intent in signing the firm name, that the firm and each member thereof should be legally bound and held for the payment of the debt under any circumstances, though the firm name may have been signed thereto by one partner in the absence of others; and that therefore to carry out the purpose and intent of the

parties it was proper in that case to presume, that the writing in question was not intended to be sealed as to the firm although the attesting clause to the said writing said, "witness our hands and seals;" and that the plaintiff had the right under such circumstances to treat said writing as a promissory note as to the firm, and as a single bill obligatory as to the other signers thereto. This of course I do not affirm to be the true reason of the decision of the Court in that case, or for the use of the language employed by Judge Moncure in the opinion of a majority of the Court as delivered by him, but only suggest that such views might have influenced the decision, as they are not without plausibility or apparent reason.

As before stated and shown the decision in *Norvell* v. *Walker*, 9 W. Va. was upon oyer and demurrer only. The decision upon oyer and demurrer in overruling the demurrer in that case is supported by the decisions in 3 Mon. and 10 Barb. upon oyer and demurrers, but perhaps in part at least for different reasons assigned. But what rule should govern in a case like the case at bar, touching the writing in question upon the trial, considering the case as though the plea of *non est factum* had been filed by the defendant, Riffe, (though as before stated I have some doubts whether it ought to be so considered as the case is presented) denying that the writing in question is his deed? In Virginia and in this State more importance and significance is given to the words " witness my hand and seal " or " we have hereunto set our hands and seals" or " as witness our hands and seals" and the like found in the body of a writing of the character of that in question than is given to the same or like language in similar writings in many of the other States of the Union. With us, as before stated, although a paper-writing of this character be signed and have a scroll or seal affixed, still under no circumstances will it be deemed to be a specialty, unless the seal or scroll is recognized in the body of the the writing; nor will it be recognized as a specialty,

simply because those or similar words are employed in the writing, unless there be also a seal or scroll, or seals or scrolls, affixed or adopted by the party or parties signing it.

In the case of *Slatter* v. *Cowan*, 7 Gill & J. at pages 286 and 287 Judge Buchannan says: "The words 'In testimony whereof I have hereunto set my hand and seal' or 'we have hereunto set our hands and seals' found in the body of an instrument of writing are not sufficient to constitute it the deed or specialty of the party named, *where seal is not affixed*. On the other hand, it is the deed of the party named, who has sealed and delivered it, although there be no such words in the body of the writing" The last clause of the foregoing remarks of Judge Buchannan is certainly not the law in Virginia or in this State, touching instruments like that in question. By the common law one piece of wax will suffice, having the seal of each upon it, but to make it his deed, the seal of each must be affixed, either by himself or some other person acting in his behalf, and having authority to do so. I have seen no case and none has been shown in which, where there were two or more parties signed the writing, the seal or scroll of one with nothing more was taken or held to be the seal or scroll or adopted seal or scroll, even though in the body of the writing it said " witness my hand and seal."

Syllabus 1. In the absence of any such decision it is my opinion, that though the writing in question has in the body of it the words, " as witness my hand and seal," in the absence of anything else appearing tending to prove that the defendant, Riffe, adopted the scroll appearing opposite the signature of the defendant, McHuffman, upon the writing in question, it should not beheld that the defendant, Riffe, made or adopted said scroll as his seal. Whether it should be otherwise if the writing said " witness our hands and seals," I do not now say anything as I conceive that question does not arise here. And as it appears in this case that defendant, Riffe, signed

said writing, in my opinion it should be considered as to him a promissory note, and as to defendant, McHuffman, a single bill obligatory.  Entertaining these views I do not deem it material to determine whether the defendant, Riffe, was competent to testify that he had signed the writing in question " as his promissory note " and that he did not adopt as his seal the scroll thereon. There is no count in the declaration in this cause declaring upon the writing in question as a promissory note as to defendant, Riffe, and as a single bill as to the defendant, McHuffman, as in the case in 8 Gratt (*Ubi Supra*); but I consider under the agreement of the parties, which is made a part of the record, that I have the right and authority to decide and dispose of this case as though the declaration did contain such a count.

And I now proceed to ascertain and determine whether the plaintiff's action against the defendants, or either of them, as brought is barred by the statute of limitations, and should be so held in this case.   It is true as I have before stated that the plaintiff might have sued the defendant, Riffe, separately on the writing in question at any time after its execution and before the expiration of five years from the date thereof, and obtained judgment against him for the amount thereof, excepting the time he was obstructed as agreed prior to March 1, 1865. And also, I apprehend, if this suit had been brought against defendant, Riffe, separately at the time it was brought that he might have relied successfully upon the statute of limitations of five years, taking it as true that defendant, Riffe, could not take the oath mentioned in the agreement of facts in this case, upon the authority of the case of *Huffman* v. *Alderson's adm'r*, 9 W. Va. 616.  But the plaintiff was not bound to bring separate actions against the defendants, or either of them, upon said writing—the promise to pay in legal contemplation as we have seen was joint as well as several.  And the plaintiff therefore had the legal right to select his remedy— to either bring his joint action against the defendants, or

1879
Special Term.

Keller's Adm'r
v.
McHuffman
et al.

Syllabus 2.

to sue one or both of them separately.    He chose not to incur the expense and trouble of two several suits, against the defendants separately but to bring one suit against them jointly.    In bringing this suit in the form he did, he incurred all the risks incident to a joint action in such case, and he is entitled to all the benefits and advantages thereof.    According to the principles decided in the said case of *Huffman* v. *Alderson's adm'r*, the fact the defendant, Riffe, could not take the suitors test-oath is not sufficient to prevent the extension of the limitation under the act of the Legislature of Februray 6, 1873; but to prevent that extension it must appear, that neither of the defendants could take said oath.    See *President and Directors of Bank of Virginia* v. *Handly et al.*, decided at this term.

Under the provisions of the 10th section of chapter 136 of the Code of 1868 of this State either of the defendants to a joint action, if such had been brought, could have procured the dismissal of such action as to all the defendants upon making the required affidavit, if the proper affidavit was not filed on the other side, and this affidavit it is agreed could have been made by the defendant, McHuffman, and could not have been made by Keller deceased, as is agreed.    The fact that one of the defendants could take the test-oath would have had the same effect before the courts then declaring the law in this State and according to the terms of the act, as if both could have taken it.    Counting out the time that is mentioned in the said act of February, 1873, this joint action was not barred as to the defendants or either of them at the time it was commenced.    The counsel of the defendant, Riffe, has argued

in his printed brief at much length against the constitutionality of said act of February, 1873, which is chapter 28 of said acts and against the correctness and soundness of the decision of this Court in the said case of *Huffman* v. *Alderson's adm'r.* 9 W. Va. 616, in which this Court held that said act was constitutional.    At the time that decision was rendered the court was aware, that there were numer-

ous decided cases by respectable courts on both sides of the question. The counsel for defendant, Riffe, has certainly displayed great energy in gathering the cases against the constitutionality of said act; but he has only presented us with the cases on his side of the question. In the opinion of the Court, delivered by Judge Green in the said case of *Huffman v. Alderson's adm'r.* numerous decisions of respectable courts are cited supporting and sustaining the decision in that case; and doubtless numerous others could have been cited. The opinion of Judge Green contains reasons as well as authority for the decision arrived at by the Court.

> After duly considering the plausible argument of defendant Riffe's counsel and reviewing the opinion of this court I do not feel satisfied, that the said act of February, 1873, is unconstitutional, or that the decision of this Court in the case of *Huffman* v. *Alderson's adm'r,* affirming the constitutionality of said act, is unsound and unsupported by reason or authority. Should I hereafter become satisfied on further reflection and on receiving additional light that the decision is erroneous, and that said act is unconstitutional, I will not hesitate so to declare on a proper occasion.

Upon the whole it seems to me there is no error in the judgment of the circuit court of Monroe county, rendered in this cause, on the 17th day of October, 1877; and the said judgment must therefore be affirmed with costs and damages according to law in favor of the defendant in error, Henry Keller, administrator of David Keller, deceased, &c.

JUDGES GREEN AND JOHNSON CONCURRED.

JUDGMENT AFFIRMED.